IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RICHARD DUNCAN | : |
| | : Case No. 2:13-CV-01157 |
| Plaintiff, | : |
| | : JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Magistrate Judge Kemp |
| JON A. HUSTED, in his official capacity as | : |
| SECRETARY OF STATE OF OHIO, | : |
| | : |
| Defendant. | : |

## <u>OPINION & ORDER</u>

This matter is before the Court on Pro Se Plaintiff Richard Duncan's Motion for Preliminary Injunction (Doc. 7). Plaintiff moves the Court pursuant to Fed. R. Civ. P. 65 for an Order enjoining Defendant Secretary of State Jon Husted from enforcing O.R.C. §§ 3513.262 & 3513.263 ("§§ 262 & 263") with regard to Plaintiff's signature-gathering process for his 2016 Presidential campaign. (*Id.* at 1). Defendant opposes, on the grounds that Plaintiff cannot show irreparability of injury, and because he is unlikely to succeed on the merits. (Doc. 11 at 5-8). For the reasons set forth herein, Plaintiff's Motion is **DENIED**.

### I.  BACKGROUND

Plaintiff, a resident of Aurora, Ohio, is an independent candidate for President of the United States, and has run in the last three presidential elections. (*Compl.*, Doc. 2, ¶¶ 2, 10). As part of his political philosophy, Plaintiff funds his campaign himself, spending less than $5,000 on each campaign, and personally collecting the signatures necessary for his name to appear on the ballot. (*Id.*, ¶ 10). In the 2008 and 2012 election seasons, Plaintiff collected over 12,000 signatures, and received, in 2012, 12,557 votes in Ohio, Kentucky, Maryland, and Florida. (*Id.*).

1

On June 6, 2013, Plaintiff began collecting signatures for the 2016 President election. (*Id.*, ¶ 16).  Via a letter from Defendant dated June 21, 2013, however, Plaintiff was notified of the passage of Senate Bill 47, which amended §§ 262 & 263 to include a one-year limitations period on nomination-petition signatures.  (*Id.*, ¶ 17; *see also* Doc. 2-1).  Plaintiff argues that his "time to gather signatures was compress down from 3 years to 1 year." (*Compl.*, ¶ 17).

Plaintiff filed suit on November 18, 2013, alleging that §§ 262 & 263 are a "severe burden" on Plaintiff, which will force him to change his campaign, increase his spending, and "obliterate" his message.  (*Id.*, ¶¶ 18-19).  Plaintiff seeks relief under 42 U.S.C. § 1983, for violations of the First and Fourteenth Amendments of the United States Constitution, on the grounds that §§ 262 & 263 impermissibly burden Plaintiff's rights to free speech, free association, and right to petition the government, violate the Fourteenth Amendment's guarantee of equal protection, and place an unconstitutional burden on the voting rights of Plaintiff's supporters.  (*Id.*, ¶¶ 22-24).  Plaintiff seeks a declaration that §§ 262 & 263 are unconstitutional, and that Defendant be preliminarily and permanently enjoined from enforcing them.  (*Id.* at 8).

On January 22, 2014, Plaintiff filed the Motion for Preliminary Injunction *sub judice*. (Doc. 7).  The matter has been fully briefed (*see* Doc. 11; Doc. 12), and the Court heard argument on the Motion on March 19, 2014.

## II. STANDARD OF REVIEW

A preliminary injunction is a remedy designed to preserve the status between the parties pending a trial on the merits.  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  When determining whether to grant a preliminary injunction, the Court balances the following four factors: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public

interest would be served by issuing the injunction." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). These factors are to be balanced against one another other and should not be considered prerequisites to the grant of a preliminary injunction. *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998). The factors "guide the discretion of the district court," but "do not establish a rigid and comprehensive test." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). Whether the combination of the factors weighs in favor of issuing injunctive relief in a particular case is left to the discretion of the district court. *See Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

As an extraordinary remedy, a preliminary injunction is to be granted only if the movant carries his burden of proving that the circumstances clearly demand it. *Id.* The movant has "the burden of establishing a clear case of irreparable injury and of convincing the Court that the balance of injury favor[s] the granting of the injunction." *Garlock, Inc. v. United Seal, Inc.*, 404 F.2d 256, 257 (6th Cir. 1968). A plaintiff "must show more than a mere possibility of success," but need not "prove his case in full." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (citations omitted). Rather, it is sufficient if "the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (citation omitted).

### III. ANALYSIS

Plaintiff argues, first, that he likely to succeed on the merits of his case. Plaintiff assets that §§ 262 & 263 place an unconstitutional burden on third-party presidential candidates, since those candidates needing signatures in order to appear on the ballot will have, effectively, only 1 year to campaign, in contrast to major-party candidates, who can campaign for four years. (Doc.

7 at 2). Plaintiff alleges that his First Amendment rights are therefore being curtailed, "as he will now have to change the content or message of his self-sufficient low cost campaign." (*Id.*). Demanding heightened scrutiny on the basis of both the First and Fourteenth Amendments, Plaintiff insists that third-party candidates are "similarly situated" but are treated differently than major-party candidates, which the State cannot justify. (*Id.*; Doc. 12 at 2). Plaintiff maintains that Defendant cannot offer "any legitimate state interest" for the burden it is placing on Plaintiff, and that this burden "impinges on his right to 'associate freely for the advancement of political ideas.'" (Doc. 12 at 3) (quoting *Jolivette v. Husted*, 694 F.3d 760, 766-67 (6th Cir. 2012)).

Plaintiff additionally argues that he will suffer irreparable injury, since "any impediment on [First] Amendment rights, even for brief periods, causes irreparable harm," and since he "stands to lose supporters who voted for him if he has to change his platform." (*Id.* at 3). Plaintiff insists that because of the law, his signature-gathering process has been brought to "a virtual halt due to fear of collecting meaningless signatures." (Doc. 12 at 1). Plaintiff concludes that any attempt to gather the signatures necessary within the one-year period would either be impossible, if done alone, or ideologically damaging, if he is forced to hire assistance. (*Id.*). Plaintiff adds that Defendant will suffer no injury, since no other independent ran in Ohio in 2012; that the public will benefits, since they will gain increased choices on the 2016 ballot; and that he need not post a security, since there is no risk of monetary loss. (Doc. 7 at 3).

Defendant responds that Plaintiff has failed to prove the injury is "likely" to occur, but only that it is "possible." (Doc. 11 at 5). Defendant asserts that it is equally likely that Plaintiff will be able to collect enough signatures himself, or that his supporters will voluntarily assist him, and that he will not have to change his campaign message. (*Id.*). Defendant takes issue with Plaintiff's assumption that his past practice of spending three years gathering signatures is

4

relevant to the amount of time it will take him this election cycle, or that he will lose supporters if he enlists volunteer aid. (*Id.*). Defendant further disputes that Ohio law prevents Plaintiff from collecting signatures now; rather, he is free to begin collection at any time, as long as his petition is submitted by August 10, 2016. (*Id.* at 6). Preliminary relief, Defendant asserts, is not necessary, where a full adjudication on the merits could redress any harm to Plaintiff. (*Id.*).

Defendant additionally argues that Plaintiff is unlikely to succeed on the merits. Defendant maintains that Ohio's one-year limit does not violate the First Amendment, since courts have consistently upheld even much-shorter time limits. (*Id.* at 7). Nor do §§ 262 & 263 violate Equal Protection, asserts Defendant, because Supreme Court and Sixth Circuit precedent make clear that independent and major-party candidates are not "similarly situated for the purposes of election regulations," and thus the existence of differing rules for each is not dispositive of an Equal Protection violation. (*Id.* at 7-8) (quoting *Jolivette*, 694 F.3d at 771).

Sections 3513.262 and 3513.263 of the Ohio Revised Code define the filing and processing requirements, respectively, of nominating petitions for candidates in Ohio elections. Section 262 sets forth certain procedures that the Secretary of State and the county boards of election must follow once they have received a nominating petition. In particular, each board of election must "examine and determine the sufficiency of the signatures on the petition papers." O.R.C. § 3513.262. Under the amended statute, a signature on a nominating petition "is not valid if it is dated more than one year before the date the nominating petition was filed." (*Id.*). All other matters of validity of a petition "shall be determined by the secretary of state or the board with whom such petition papers were filed." (*Id.*). Section 263 details the processing procedure for nominating petitions, and again requires that each board "examine and determine the sufficiency of the signatures on the petition papers transmitted to or filed with it," and that

5

"[a] signature on a nominating petition is not valid if it is dated more than one year before the date the nominating petition was filed." O.R.C. § 3513.263.

Under O.R.C. § 3513.257, persons desiring to become independent candidates for President of the United States "shall file, not later than four p.m. of the ninetieth day before the day of the general election at which the president and vice-president are to be elected, one statement of candidacy and one nominating petition." It also requires that the petition be signed by "no less than five thousand qualified electors." *Id.*, § 257(A). Section 257 specifies that nominating petitions for President are to be field with the Secretary of State. (*Id.*).

### A. Likelihood of Success

Plaintiff is unlikely to succeed on the merits of his claim. In *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), the Supreme Court established a framework for examining state ballot-access laws. Under *Anderson*, a court must weigh the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments" against the state's interests in "justif[ying] the burden imposed by its rule." 460 U.S. at 789. The extent of the Court's inquiry "depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. Thus, when these rights are subject to "severe" restrictions, the regulations must be "narrowly drawn to advance a state interest of compelling importance." *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). But when a state election law imposes only "reasonable, nondiscriminatory restrictions" upon constitutional rights, "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Id.* (quotation omitted).

In practice, the Supreme Court has upheld election schemes setting signature and filing requirements for independent candidates, often with a much more compressed timeline than the one at issue here. In *Jenness v. Fortson*, 403 U.S. 431 (1971), the Court found that Georgia's

6

election framework did not violate the First or Fourteenth Amendments, because "[a]nyone who wishe[d], and who [wa]s otherwise eligible, may be an independent candidate for any office"; indeed, "[a]ny political organization, however new or however small, [wa]s free to endorse any otherwise eligible person as its candidate." *Id.* at 438. Under Georgia's independent-candidate regime, candidates could "confine themselves to an appeal for write-in votes," or could "seek, over a six months' period, the signatures of 5% of the eligible electorate for the office in question." *Id.* Thus, the Court concluded that Georgia's system "in no way [froze] the status quo, but implicitly recognize[d] the potential fluidity of American political life," and held that nothing in this system abridged the candidates' rights of free speech or association. *Id.* at 439-40. Nor did the system violate the Fourteenth Amendment, since an aspiring candidate could choose either of the "alternative routes" that were available: winning a party primary, or gathering enough signatures; by making available "these two alternative paths, neither of which can be assumed to be inherently more burdensome than the other," Georgia did not violate the Equal Protection Clause. *Id.* at 440-41. *See also Am. Party of Texas v. White*, 415 U.S. 767, 786-87 & n.18 (1974) (holding that Texas' 55-day time period in which to gather 22,000 signatures was neither "unreasonable" nor "unduly burdensome."); *Storer v. Brown*, 415 U.S. 724, 740 (1974) (finding that, "standing alone, gathering 325,000 signatures in 24 days," while still "a substantial requirement," would "not appear to be an impossible burden.").

Since *Jenness*, the federal courts have frequently upheld similar signature-gathering time periods against constitutional challenges. *See, e.g.*, *Nader v. Keith*, 385 F.3d 729, 735 (7th Cir. 2004) (upholding 134-day time limit to gather 25,000 signatures, on the grounds that restrictions on candidacy must "be considered together rather than separately, [so that] [t]he fewer the petitions required to put a candidate on the ballot and the harder it is to challenge a petition . . .

7

the shorter the deadline for submitting petitions can be made without unduly burdening aspiring candidates."); *Nader v. Connor*, 332 F. Supp. 2d 982, 985 (W.D. Tex. 2004) *aff'd*, 388 F.3d 137 (5th Cir. 2004) (upholding Texas' requirement that an independent candidate for president obtain 64,076 petition signatures over sixty-two days to merit a place on the general-election ballot).

Similarly, it is well-settled that differing treatment of independent and major-party candidates does not violate the Equal Protection Clause. Challenges on this basis "do not get off the ground because independent candidates and partisan candidates are not similarly situated for purposes of election regulations." *Jolivette*, 694 F.3d at 771 (citing *Jenness*, 403 U.S. at 440-41). As the Court of Appeals has explained, the primary-election process for major-party candidates "serves the important function of winnowing out competing partisan candidates," while "the independent candidate is excused from this process." *Id.* at 771 (quoting *Van Susteren v. Jones*, 331 F.3d 1024, 1026 (9th Cir. 2003)). But it "cannot be said that the route open to an independent candidate through a petition is more burdensome than that open to a party candidate." *Miller v. Lorain Cnty. Bd. of Elections*, 141 F.3d 252, 259 (6th Cir. 1998). Because the partisan candidate "must win the majority of votes in a party primary," whereas the independent must gather signatures, the "two pathways to the ballot [are] different," meaning that "different restrictions for their access to the ballot are permissible." *Jolivette*, 694 F.3d at 771 (citing *Van Susteren*, 331 F.3d at 1027). Thus, candidates are not "similarly situated," and Plaintiff's equal-protection arguments are unlikely to succeed. *See id.* at 771-72.

## B.  Irreparable Harm

Plaintiff has failed to show irreparable harm flowing from the alleged unconstitutional action. While Plaintiff is correct that "[e]ven minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief," *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989), Plaintiff has not demonstrated a First Amendment injury here.

8

S*ee Jolivette v. Husted*, 886 F. Supp. 2d 820, 837 (S.D. Ohio 2012) *aff'd*, 694 F.3d 760 (6th Cir. 2012) ("Because Plaintiff has not substantially demonstrated a constitutional violation, the Court is unable to conclude that irreparable harm has been established for the purpose of issuing a preliminary . . . injunction."). Rather, nothing in §§ 262 & 263 prevents Plaintiff from beginning his signature collection now, and Plaintiff has alleged no facts to support a finding that, even if he delayed, he could not acquire the necessary signatures within a shortened timeframe.

The Court cannot conclude that Plaintiff is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiff can continue collecting signatures even now: if he is ultimately successful on the merits of his case, they will be counted; if he is unsuccessful, he can still use one year's worth of signatures to support his nominating petition, or attempt to gather more before filing with the Secretary of State; and, even if he feels compelled to enlist the aid of volunteers to gather signatures, he has not demonstrated that this minimal burden infringes on his right to free speech or otherwise causes him constitutional injury. *See Burdick*, 504 U.S. at 433 ("Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'") (quoting *Storer*, 415 U.S. at 730).

### C. Balance of Harm

The Court must next assess whether the issuance of an injunction "would cause substantial harm to others." *Overstreet*, 305 F.3d at 573. The movant bears the burden of showing "that the balance of injury favor[s] the granting of the injunction." *Garlock*, 404 F.2d at 257. Although neither Party addressed this issue in its papers, at oral argument counsel for the State argued that any harm to Plaintiff is self-inflicted, since he remains free to gather signatures

while his lawsuit is pending, and even if the statutes should ultimately be held to be constitutional.  At the same time, according to Defendant, an injunction would be harmful to the state and the public, since Ohio has a duty to conduct efficient, fair elections, with the law clearly settled well in advance of an election.  Counsel for the State conceded, however, that an injunction here would ultimately have little impact on the election process.

Accordingly, the Court finds that the balance of harms favors neither Party.

### D.  Public Interest

Finally, the Court must consider whether the public interest would be served by issuing the injunction.  *Overstreet*, 305 F.3d at 573.  This factor was also not addressed in either Parties' briefing, but at oral argument Defendant asserted that the public interest weighs against the issuance of an injunction.  Defendant argues that the State has a strong interest in creating a fair and robust process for validating the signatures for every independent candidate, which can take a considerable amount of time and often results in the invalidation of many petition signatures.  Thus, the State alleges that the shorter, one-year time frame imposed by the amended statutes would make invalidation less likely, and place a smaller burden on the county boards of election when they undertake to confirm the information provided with the petition signatures.  Plaintiff responds that the public has an interest in third-party and independent candidates and political parties, which must be given the "time and opportunity to organize in order to meet reasonable requirements for ballot position."  *Williams v. Rhodes*, 393 U.S. 23, 32 (1968).  Sections 262 & 263, Plaintiff insists, operate to halt such formation before it ever takes root.

Upon review of the Parties' arguments, the Court concludes that the public interest weighs against the issuance of an injunction.  Defendant has outlined powerful justifications for its statutory scheme, while Plaintiff argues only, in essence, that he should win on the merits of his claim, and thus should be granted injunctive relief now.

## IV. CONCLUSION

Plaintiff has failed to demonstrate more than the mere possibility of success on the merits, or a clear case of irreparable harm. Nor has he shown that the balance of harms weighs in his favor, or that the public interest would be served by the issuance of an injunction. He cannot therefore carry his burden of demonstrating that the circumstances demand the extraordinary remedy of a preliminary injunction. Plaintiff's Motion for Preliminary Injunction (Doc. 7) is hereby **DENIED**.

**IT IS SO ORDERED.**

                                                      s/ Algenon L. Marbley
                                                **ALGENON L. MARBLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**DATED: March 20, 2014**