**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **RICHARD DUNCAN** : | |
| : | Case No. 2:13-cv-1157 |
| **Plaintiff,** : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Kemp |
| **SECRETARY OF STATE** : | |
| **JON A. HUSTED,** : | |
| : | |
| **Defendant.** : | |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Reconsider (Doc. 41) Magistrate Judge Kemp's September 17, 2014 Opinion and Order (Doc. 39).  As it relates to the motion to reconsider, the Magistrate Judge denied in part a motion for a protective order (Doc. 23) filed by Defendant Husted concerning Plaintiff's notice to depose Defendant.  Upon review by the Court, and for the reasons set forth below, the Court GRANTS the motion to reconsider.

**I.  BACKGROUND**

Plaintiff Richard Duncan, who is representing himself in this matter, is a resident of Ohio who has run for United States President in the last three elections.  He brought this action against Defendant Secretary of State Jon A. Husted, challenging the constitutionality and legality of amendments to Ohio Rev. Code §§3513.262 & 3513.263.  The amendments that he is challenging reduce the time period (from three years to one year) in which an individual who wishes to run in an Ohio election as an independent candidate may gather nominating-petition signatures.  According to the complaint, these amendments had the sole purpose of preserving

the existing two-party monopoly on ballot access and are not justified by any legitimate state concerns.

On June 5, 2014, Plaintiff noticed Defendant Husted for a deposition, which was set for July 10, 2014.  Doc. 23, Ex. F.  Part of Defendant's response to that notice was to offer a member of Defendant's staff to testify instead.  Plaintiff subsequently changed the date of the deposition to July 29, 2014, but refused the offer for a substitute witness (who was then identified by Defendant's counsel as Matthew Damschroder, the person "responsible for overseeing the processing of petitions received by the Secretary [of State}'s office").  Id., Ex. J.  Given the parties' inability to reach an agreement on this issue, Defendant filed his motion for a protective order on July 18, 2014.

After the motion was briefed, the Magistrate Judge issued the Opinion and Order in question.  As it relates to the deposition of Defendant Husted, the Magistrate Judge ruled that Defendant had not made a sufficient showing to prevent him from being deposed at all, but that given his position and the subject matter, the deposition should be limited to one hour and taken at Defendant's office.  It is that ruling which Defendant challenges through his motion to reconsider.

## II.  STANDARD OF REVIEW

Fed.R.Civ.P. 72(a) provides for reconsideration by this Court of orders of the Magistrate Judge on nondispositive matters.  Rule 72(a) provides that, in considering objections to such orders, the Court shall "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed.R.Civ.P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A).  The clearly erroneous standard "mandates that the district court affirm the magistrate's decision unless, on the entire

evidence, it 'is left with the definite and firm conviction that a mistake has been committed.' In the absence of clear error, the magistrate's order must stand." *Farley v. Farley*, 952 F.Supp. 1232, 1235 (M.D. Tenn.1997) (internal citations omitted).

### III.  ANALYSIS

Neither party disputes that the Court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including precluding discovery or limiting or otherwise specifying how discovery may take place.  Fed. R. Civ. P. 26(c).  The question in this case is whether, under the facts presented, the Magistrate Judge's decision not to grant a protective order in the form requested by Defendant is clearly erroneous or contrary to law.

The legal error which Defendant asserts is the failure to apply a version of the "apex" doctrine to the deposition of Defendant Husted, a high-ranking government official.  In *Serrano v. Cintas Corp.,* 699 F.3d 884 (6th Cir. 2012), the Court of Appeals described this doctrine as resting on the assumption that both harassment and abuse lie behind a deposition notice directed to a high-ranking corporate official, thus justifying the issuance of a protective order prohibiting such a deposition from going forward unless the requesting party shows that the official possesses some unique store of relevant knowledge that cannot not be obtained from other sources.  The Court of Appeals rejected that formulation of the doctrine, holding that courts could not assume that a deposition of such an individual would be unduly burdensome, and that a specific showing of one of the harms listed in Rule 26(c) had to be made before a protective order based on the presence of such harm could properly be entered.

According to Defendant, Serrano's holding does not extend to highly-placed governmental officials. Citing to a long line of decisions from various courts, Defendant argues that the courts have always been protective of governmental officials when it comes to having to sit for depositions, precisely due to the potential that parties will use a deposition as a means of harassment. So, for example, in *Lederman v. New York City Dept. of Parks and Recreation*, 731 F.3d 199, 203 (2nd Cir. 2012), one of the cases Defendant cites, the Court of Appeals held that "to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition - for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means."

The commonly-cited genesis of this doctrine is *United States v. Morgan*, 313 U.S. 409 (1941), which involved a rate order issued by the Secretary of Agriculture. The Secretary was both deposed and called as a witness at trial. The Supreme Court commented that the "examination" should never have occurred. However, it appears that the Court's concern was not harassment or burden but intrusion on the deliberative privilege process through which the order was issued, since the rule-making procedure followed in that case was characterized by the Court as quasi-judicial. The Court noted that, treating the Secretary's position much the same as that of a judge, "[s]uch an examination of a judge would be destructive of judicial responsibility." *Id.* at 422. *Morgan* never cited to Rule 26(c) nor to the list of potential harms which it contains.

The Court of Appeals for this Circuit has followed Morgan in cases involving governmental officials. *See, e.g., Warren Bank v. Camp*, 396 F.2d 52 (6th Cir. 1968). Camp, the

-4-

named defendant in that case, was the Comptroller of the Currency, and the case involved the issuance of a charter to a new national bank. The Court of Appeals, citing *Morgan,* approved the denial of a request that Camp and two other governmental officials be deposed, but its rationale also appears to be grounded in the deliberative process privilege; the Court said the purpose of the deposition was "to probe [Camp's] mind as to exactly why he saw fit to exercise his discretion as he did in relation to the grant of this charter." It rejected that type of exploration of the mind of a decision-maker for the same reason set forth in *Morgan, i.e.* that the decision-making process in that case was quasi-judicial, and judges are generally not to be examined about their thought processes. Consequently, Defendant has not cited, nor has the Court's research located, any Sixth Circuit authority that endorses, as clearly as the Second Circuit did in *Lederman*, the proposition that high-ranking government officials are inherently the targets of abusive or harassing discovery tactics and need not make a specific showing that they would be unduly burdened by having their depositions taken.

   The two District Court cases within the Sixth Circuit which the Defendant cites - *Murray v. U.S. Dept. of Treasury,* 2010 WL 1980850 (E.D. Mich. May 18, 2010), and *Jackson v. City of Detroit,* 2007 WL 2225886 (E.D. Mich. Aug. 1, 2007), are not particularly persuasive precedent to the contrary. In *Murray*, neither party contested the application of an "apex" rule to a request to depose Timothy Geithner, Secretary of the Treasury, and *Jackson* (like *Murray*) relied on out-of-circuit cases which predated *Serrano*. The Court thinks it likely that *Serrano*'s directive that the District Courts not assume, without being provided with some evidence, that a particular deposition would be unduly burdensome or harassing, would apply equally to governmental

officials as it does to corporate officials, and it therefore finds no clear error in the Magistrate Judge's reasoning on that point of law.

That does not, however, end the issue. Defendant also argued that even if the "apex" doctrine did not apply, he had made the requisite showing of harm to justify the issuance of a protective order. In analyzing that issue, the Magistrate Judge reviewed Mr. Damschroder's affidavit (Doc. 23, Ex. M), which averred that if Secretary Husted were required to submit to a deposition in this case, he would be subjected to an undue burden. That statement is based on Mr. Damschroder's knowledge of the Secretary's "many obligations and time constraints" and his "numerous official responsibilities." The same, however, can be said about any high-ranking official, corporate or governmental, and it is difficult to square such generalities with the need to make a specific showing of undue burden under Rule 26(c). Obligations, time constraints, and official responsibilities are all part of the job of any busy official, including Secretary Husted, and cannot be used as a blanket pass against being deposed in any and all cases involving the duties of the office. Indeed, Secretary Husted, like any other elected official, should understand that no formulations of the "apex" doctrine places him above the law. To give legitimacy to the strained reading of the "apex" doctrine urged by Defendant Secretary upon the Court would undermine both public accountability and the system of checks and balances itself. The Supreme Court recognized this time honored concept in *United States v. Bryant*:

> Dean Wigmore stated the proposition thus: 'For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'

339 U.S. 323, 331 (1950).

Nevertheless, the Court also is required to consider the factors set forth in Fed.R.Civ.P. 26(b)(2)(C)(1), which states that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that ... the discovery sought is unreasonably cumulative or duplicative, or *can be obtained from some other source that is more convenient, less burdensome, or less expensive*...." (emphasis supplied).  Defendant has amply demonstrated here that it is actually more likely that Mr. Damschroder, rather than Secretary Husted himself, will be able to answer the questions which Plaintiff wishes to ask.  Mr. Damschroder is not only responsible for the pertinent segment of the Secretary of State's duties, but he has experience at the county board of election level as well, which is another issue in this case.  It should prove to be more convenient and less expensive to have him sit for a deposition, at least in the first instance, and he will presumably speak authoritatively for the Secretary of State given both his position and the fact that the Secretary has offered him as a substitute witness.  Should he be unable to answer the questions satisfactorily, Plaintiff may renew his request to depose Defendant Husted, but on the current record, the Court finds that the factors set out in Rule 26(b)(2)(B)(1) provide authority to grant the requested protective order.  Since the Magistrate Judge did not fully consider those legal factors, and the Court makes its decisions of law in this context *de novo*, the Court will grant the motion to reconsider and grant the motion for a protective order to the extent that it seeks to postpone, and perhaps eliminate altogether, the deposition of Defendant Husted until Mr. Damschroder is deposed.  The decision of the Magistrate Judge is affirmed in all other respects.

## IV.  CONCLUSION

For these reasons, Defendant's motion to reconsider (Doc. 41) is hereby **GRANTED**. The Court **GRANTS** the motion for a protective order (Doc. 23) and directs Plaintiff to conduct a deposition of Matthew Damschroder before noticing the deposition of Defendant Husted.

**IT IS SO ORDERED.**


                                            **/s/ Algenon L. Marbley**
                                       **ALGENON L. MARBLEY**
**DATED: February 12, 2015**             **UNITED STATES DISTRICT JUDGE**